FILED
CLERK, U.S. DISTRICT COURT

SEP 2 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BENITO NUNEZ GONZALES,

           Petitioner,

    v.

A.P. KANE, WARDEN,

           Respondent

CASE NUMBER

CV 04-8881-PA (AJW)

NOTICE OF FILING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND
LODGING OF PROPOSED JUDGMENT

TO: All Parties of Record

You are hereby notified that pursuant to the Local Rules Governing Duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed and a proposed judgment has been lodged on _____Sept. 21, 2006_____, copies of which are attached.

Any party having objections to the report and recommendation and the proposed judgment and/or order shall, not later than October 16, 2006, , file and serve a written statement of objections with points and authorities in support thereof before the Honorable Andrew J. Wistrich_____, U.S. Magistrate Judge.

Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

The report and recommendation of a Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until entry of a judgment and/or order by the District Judge.

           CLERK, UNITED STATES DISTRICT COURT

Dated: September 21, 2006_____

By_____Y. Benavides_____
           Deputy Clerk

Attachments

DOCKETED ON CM

SEP 2 1 2006

BY_____058

SCANNED

FILED
CLERK, U.S. DISTRICT COURT

SEP 2 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    EPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

BENITO NUNEZ GONZALES,              )
                                    )
                    Petitioner,     )  Case No. CV 04-8881-PA(AJW)
                                    )
        v.                          )
                                    )
A.P. KANE, Warden,                  )  REPORT AND RECOMMENDATION
                                    )  OF MAGISTRATE JUDGE
                    Respondent.     )
_____)

## Background

On September 14, 1991, petitioner and three cohorts were riding in a car near a mini-mall when they came upon Juan Lopez and Luis Figueroa. Petitioner and his crime partners pulled into a parking lot with the intention of robbing Lopez and Figueroa to get money to buy beer. Lopez resisted and a fight ensued. Figueroa was struck on the right side of his head with an unknown object. Figueroa heard someone yell "Give met the gun," and "kill him, kill him" or "shoot him, shoot him." Lopez was shot and killed. [Respondent's Exhibits ("Resp. Exs." 2-6]. Petitioner denied shooting Lopez, but admitted his involvement in the robbery that led to Lopez's murder.

In 1993, petitioner was convicted of one count of second degree

1 murder, and the allegation that a principal was armed with a firearm
2 was found true.   [Resp. Exs. 1 & 2].[1]   Petitioner was sentenced to
3 state prison for a term of fifteen years to life. [Resp. Ex. 1].

4     Petitioner received his first parole suitability hearing on
5 December 4, 2001.   The Board of Prison Terms ("BPT") found him
6 unsuitable for parole, and it is this determination that petitioner
7 challenges in his federal habeas petition. [Resp. Ex. 4].   Petitioner
8 unsuccessfully challenged the BPT's decision in the state courts.
9 [Resp. Exs. 7-10].

10                         **The BPT's decision**

11     In the course of the hearing, the BPT detailed the facts
12 surrounding petitioner's commitment offense.   The BPT then reviewed
13 petitioner's performance in prison, noting that petitioner had three
14 CDC-115 disciplinary violations,[2] the most recent one, dated May 13,
15 2000, for making a threat toward staff. [Resp. Ex. 4 at 10; Resp. Ex.
16 5 at 3].   The other two occurred in 1995 (masturbating) and 1997
17 (disobeying a direct order). [Resp. Ex. 4 at 10; Resp. Ex. 5 at 3].
18 Petitioner also received two CDC 128 chronos,[3] both in 1998 for
19 refusing to return to class and for being late to return back to
20 school. [Resp. Ex. 4 at 10].

21     The BPT next considered the correctional counselor's report,

22

23     [1]  In a 1992 trial relating to the same incident, petitioner
24 was convicted of second degree robbery and one count of attempted
   second degree robbery. [Resp. Ex. 1].

25     [2]  A 115 "Rules Violation Report" documents misconduct "believed to
26 be a violation of law or [that] is not minor in nature." 15 Cal.Code
   Regs. § 3312(a)(3).

27     [3]  Form 128-A, a "Custodial Counseling Chrono," documents an incident
28 of minor inmate misconduct and the counseling provided. 15 Cal.Code Regs.
   § 3312(a)(2).

1  which indicated that petitioner would pose a high degree or risk to

2  the community if released. [Resp. Ex. 4 at 12]. The BPT reviewed the

3  mental health evaluation performed by Dr. Carswell, which was

4  favorable.   Dr. Carswell noted that petitioner had upgraded his

5  education, obtained his GED, completed vocational training, and

6  started attending Alcoholics Anonymous.   He also stated that

7  petitioner expressed genuine remorse and some insight into his

8  commitment offense. [Resp. Ex. 6]. He further noted that petitioner

9  had been involved in "three minor disciplinaries" in the ten years he

10 had spent in prison.  Dr. Carswell opined that the most significant

11 risk factor for future violence or criminal activity "would be a

12 return to the use of alcohol and/or drugs." [Resp. Ex. 6].    Dr.

13 Carswell concluded that petitioner's risk of danger to the community

14 if released was "no more than the average citizen in the community."

15 [Resp. Ex. 6].

16      With regard to parole plans, petitioner presented a letter from

17 his brother, who stated that he would provide petitioner with room and

18 board, and that he would help petitioner obtain a job. [Resp. Ex. 4 at

19 14-15].

20      The district attorney sent a representative to express opposition

21 to releasing petitioner on parole. [Resp. Ex. 4 at 18-19].

22      After hearing evidence and considering petitioner's prison file,

23 the BPT found that petitioner would pose an unreasonable risk of

24 danger to society if released from prison.   The BPT explained its

25 decision as follows:

26      The offense was carried out in an especially cruel and

27      callous manner.  Multiple victims were attacked when the

28      victim was killed.   The offense was carried out in a

3

dispassionate and calculating manner.  The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.  The motive for the crime was inexplicable or very trivial in relationship to the offense.  The conclusion was drawn from the Statement of Facts wherein on 9/14, 1991 Gonazale[s] and codefendants were driving near a mini-mall and they confronted the victim.  During the robbery the victim engaged - the prisoner engaged the victim in a fight and one of the victims was struck alongside the head and the other victim was killed for resisting his attackers.  The fight continued and the victim was - Witnesses heard somebody yelling during the encounter give me the gun, kill him, kill him, shoot him and the victim was subsequently shot and he died from his wounds.  The prisoner has a escalating pattern of criminal conduct.  He failed previous grants of probation.  He failed to profit from society's previous attempts to correct his criminality.  Such attempts included probation.  Prior criminality history and unstable social factors include the prisoner coming to this country illegally and associating with a gang, a gang that was affiliated with the EME.  Under prior criminality would include Health and Safety violations, under the influence of controlled substance and the instant offense of murder.  The prisoner has programmed in a limited manner while incarcerated.  He participated in self-help programs such as AA but [participation] is a recent occurrence.  He's been in prison for ten years and he's only been in AA since the year 2000.  He received

4

1  disciplinary reports while incarcerated thereby failed to
2  demonstrate evidence of positive change. His first
3  disciplinary was for masturbating 1/31/, 1995, disobeying
4  orders 7/19, '97 and threatening staff 5/13 of 2000. The
5  prisoner has continued to display negative behavior while
6  incarcerated. As a result he was assessed placement in a
7  special housing unit where program participation is limited
8  and his ability to demonstrate parole readiness is hampered.
9  However that SHU program as it's known, special housing unit
10 program, was suspended. Staff suspended it. It's also
11 noted that his correctional counselor rates him as a high
12 risk to society if he is released. The prisoner lacks
13 realistic parole plans. He does appear to have some support
14 from his brother but in terms of a place to stay and
15 acceptable employment plans there is nothing that says that
16 the prisoner definitely has a job should he be paroled in
17 the United States. And also he does have some support in
18 Mexico in terms of a job and residential plans but even the
19 parole plans in Mexico could use some firming up. The
20 hearing Panel notes that response to Penal Code 3042 notices
21 indicate an opposition to a finding of parole suitability
22 and specifically the Deputy District Attorney of Los Angeles
23 spoke in opposition to a finding of suitability. The
24 prisoner - The panel makes the following findings: The
25 prisoner needs therapy in order to face, discuss, understand
26 and cope with stress in a non-destructive manner. Until
27 progress is made the prisoner continues to be unpredictable
28 and a threat to others. The prisoner's gains are recent and

5

1   he must demonstrate an ability to maintain these gains over
2   an extended period of time.   Nevertheless there are some
3   things that the prisoner should be commended for. He should
4   be commended for even though he got an [sic] AA late he has
5   gotten into AA.   He should be commended for his work
6   reports. He does get good work reports when he's working.
7   He's also been involved in vocational programs.   He's
8   getting himself a vocation and he's received a GED, received
9   a GED in 1990 and he should be commended for that.  However
10  these positive aspects of his behavior at this time does
11  [sic] not outweigh the factors of unsuitability.  Parole is
12  denied for four years

13  [Resp. Ex. 4 at 25-28].

14     Petitioner filed habeas petitions in the Los Angeles County
15  Superior Court, the California Court of Appeal, and the California
16  Supreme Court challenging the BPT's denial.  The Superior Court found
17  that petitioner failed to state sufficient grounds for relief, the
18  Court of Appeal concluded that petitioner had failed to state
19  sufficient facts or provide an adequate record showing entitlement to
20  relief, and the California Supreme Court denied relief without
21  explanation. [Resp. Exs. 7, 8, 10].

22                    **Petitioner's contentions**

23     Petitioner alleges that the BPT's decision that petitioner was
24  not suitable for parole deprived him of due process because it was
25  arbitrary and capricious and was not supported by some evidence.
26  [Petition at 6-7a].

27                     **Standard of review**

28     This case is governed by the provisions of the Antiterrorism and

1  Effective Death Penalty Act of 1996 ("AEDPA"). <u>Rios v. Rocha</u>, 299

2  F.3d 796, 799 n.4 (9th Cir. 2002). As explained by the Supreme Court,

3  the AEDPA "places a new constraint on the power of a federal habeas

4  court to grant a state prisoner's application for a writ of habeas

5  corpus with respect to claims adjudicated on the merits in state

6  court." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

7      Under the AEDPA, a federal court may not grant a writ of habeas

8  corpus on behalf of a person in state custody "with respect to any

9  claim that was adjudicated on the merits in State court proceedings

10  unless the adjudication of the claim — (1) resulted in a decision that

11  was contrary to, or involved an unreasonable application of, clearly

12  established Federal law, as determined by the Supreme Court of the

13  United States; or (2) resulted in a decision that was based on an

14  unreasonable determination of the facts in light of the evidence

15  presented in the State court proceeding." 28 U.S.C. § 2254(d).

16      Section "2254(d)(1)'s 'contrary to' and 'unreasonable

17  application' clauses have independent meaning." <u>Bell v. Cone</u>, 535

18  U.S. 685, 694 (2002).

19          Under the "contrary to" clause, a federal habeas

20          court may grant the writ if the state court arrives

21          at a conclusion opposite to that reached by this

22          Court on a question of law or if the state court

23          decides a case differently than this Court has on a

24          set of materially indistinguishable facts. Under

25          the "unreasonable application" clause, a federal

26          habeas court may grant the writ if the state court

27          identifies the correct governing legal principle

28          from this Court's decisions but unreasonably

7

1   applies that principle to the facts of the
2   prisoner's case.
3   <u>Williams</u>, 529 U.S. at 412-13; <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73-76
4   (2003); <u>see</u> <u>Weighall v. Middle</u>, 215 F.3d 1058, 1061 (9th Cir. 2000)
5   (discussing <u>Williams</u>).

6   While only Supreme Court precedent is controlling under the
7   AEDPA, other case law is persuasive authority "for purposes of
8   determining whether a particular state court decision is an
9   unreasonable application of Supreme Court law." <u>Vlasak v. Superior</u>
10  <u>Court of California ex rel. County of Los Angeles</u>, 329 F.3d 683, 687
11  (9th Cir. 2003) (quoting <u>Luna v. Cambra</u>, 306 F.3d 954, 960 (9th Cir.
12  2002) (internal quotation marks and citation omitted), <u>amended</u>, 311
13  F.3d 928 (9th Cir. 2002)); <u>see</u> <u>Bruce v. Terhune</u>, 376 F.3d 950, 956
14  (9th Cir. 2004) ("Although only the Supreme Court's precedents are
15  binding on state courts under AEDPA, our precedents may provide
16  guidance as we review state-court determinations.").

17  Generally, when a higher state court has denied a claim without
18  explanation, federal courts "look through" that denial to the last
19  reasoned state decision. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-
20  806 (1991); <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, n.2 (9th Cir.
21  2000), <u>cert. denied</u>, 534 U.S. 944 (2001). Where no state court has
22  provided a reasoned explanation for rejecting a petitioner's federal
23  claim, a review of the record is the only means of deciding whether
24  the state courts' determination was objectively reasonable. <u>Greene v.</u>
25  <u>Lambert</u>, 288 F.3d 1081, 1088-1089 (9th Cir. 2002).

26  Finally, the AEDPA provides that state court findings of fact are
27  presumed to be correct unless the petitioner rebuts that presumption
28  by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Discussion[4]

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause, and then show that the procedures that led to the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-460 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

In the parole context, a prisoner alleging a due process claim must demonstrate the existence of a protected liberty interest in parole, and the denial of one or more of the procedural protections that must be afforded when a prisoner has a liberty interest in parole. The Supreme Court held in 1979, and reiterated in 1987, that "a state's statutory scheme, if it uses mandatory language, creates a presumption that parole release will be granted when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (citing Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and

---

[4] Because the 2001 parole decision stated that it was a four year denial, petitioner may have had a subsequent parole hearing before the date on which he filed this petition. Assuming that a subsequent parole hearing has been held, it does not render this petition moot. First, petitioner is still in custody as a result of the 2001 decision. Second, petitioner's claims challenging the denial of parole fall within the "capable of repetition yet evading review" exception to mootness. See Hubbart v. Knapp, 379 F.3d 773, 777 (9th Cir. 2004) (habeas petition challenging a two-year commitment under California's Sexually Violent Predator Act was found to "evade review" because the duration of the commitment was too short to be fully litigated prior to its expiration), cert. denied, 543 U.S. 1071 (2005).

1  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987)).[5]  The Ninth

2  Circuit has held that California's parole scheme creates a cognizable

3  liberty interest in release on parole because Penal Code § 3041 uses

4  mandatory language and is similar to the Nebraska and Montana statutes

5  addressed in Greenholtz and Allen.  McQuillion, 306 F.3d at 901-902.

6  As the Ninth Circuit has explained, "Section 3041 of the California

7  Penal Code creates in every inmate a cognizable liberty interest in

8  parole which is protected by the procedural safeguards of the Due

9  Process Clause," and that interest arises "upon the incarceration of

10 the inmate." Biggs v. Terhune, 334 F.3d 910, 914-915 (9th Cir. 2003);

11 see Sass v. California Bd. of Prison Terms, ___ F.3d. ___, 2006 WL

12 2506393, *1 (9th Cir.2006) (holding that California inmates continue

13 to have a liberty interest in parole after the California Supreme

14 Court's decision in In re Dannenberg, 34 Cal.4th 1061 (2005), cert.

15 denied, 126 S.Ct. 92 (2005)).

16      Nevertheless, because parole proceedings are not part of the

17 criminal prosecution, the full panoply of rights due a defendant in a

18 criminal proceeding is not constitutionally mandated.  Jancsek v.

19 Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  Instead,

20 the due process rights that flow from a liberty interest in parole are

21 limited: the prisoner must be provided with notice of the hearing, an

22 opportunity to be heard, and if parole is denied, a statement of the

23

24

25      [5] Respondent argues that in Sandin v. Conner, 515 U.S. 472 (1995),
26 the Supreme Court criticized the mandatory language methodology described
   in Greenholtz and Allen, and that under Sandin, California has not
27 created a protected liberty interest in parole. [Answer at 7].  The Ninth
   Circuit, however, has rejected that argument, explaining that Sandin's
28 holding is limited to internal prison disciplinary regulations.
   McQuillion, 306 F.3d at 903.

reasons for the denial.[11] <u>Greenholtz</u>, 442 U.S. at 16; <u>Jancsek</u>, 833 F.2d at 1390 (citing <u>Greenholtz</u>, 442 U.S. at 16); <u>see also</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972) (describing the procedural protections due in the parole context). In addition, due process requires that "some evidence" support the parole board's determination, and that the evidence must have "some indicia of reliability." <u>Biggs</u>, 334 F.3d at 915; <u>see</u> <u>Sass</u>, 2006 WL 2506393, *4 ("To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest--that in parole--without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context."); <u>Jancsek</u>, 833 F.2d at 1390 (adopting the "some evidence" standard set forth by the Supreme Court in <u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985));[12] <u>see also</u>

---

[11]  Petitioner does not allege that he was denied notice of the parole hearing, an opportunity to be heard, or a statement of the reasons for the denial of parole suitability. In fact, the record reflects that he received each of these procedural protections.

[12]  In <u>Hill</u>, the Supreme Court stated that

[i]n a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence. <u>See</u>, <u>e.g.</u>, <u>Douglas v. Buder</u>, 412 U.S. 430, 432 (1973) (per curiam) (revocation of probation); <u>Schware v. Board of Bar Examiners</u>, 353 U.S. 232, 239 (1957) (denial of admission to bar); <u>United States ex rel. Vajtauer v. Commissioner of Immigration</u>, 273 U.S. 103, 106 (1927) (deportation).

<u>Hill</u>, 472 U.S. at 455. The Supreme Court then held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." <u>Hill</u>, 472 U.S. at 455.

1 Caswell v. Calderon, 363 F.3d 832, 839 (9th Cir. 2004).  The "some
2 evidence" standard is satisfied if there is any reliable evidence in
3 the record that could support the conclusion reached.  Powell v.
4 Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. 445,
5 455-456 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).
6 Finally, determining whether the "some evidence" standard was met does
7 not require examination of the entire record, independent assessment
8 of the credibility of witnesses, or the weighing of evidence.
9 Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986), cert.
10 denied, 481 U.S. 1069 (1987).
11
12      The BPT provided several reasons for finding petitioner
13 unsuitable for parole, including (1) the gravity of the offense; (2)
14 his unstable social history; (3) his prison disciplinary record; (4)
15 his limited rehabilitative programming; and (5) his lack of realistic
16 parole plans.  The record supports these findings and they amount to
17 "some evidence" supporting the BPT's decision. In particular, the
18 record supports the BPT's finding that petitioner had not performed
19 well while incarcerated, including commission of a serious
20 disciplinary violation only a year before his parole hearing.   In
21 addition, the record supports the BPT's determination that petitioner
22 had only recently begun participation in AA, a program especially
23 relevant to petitioner's ability to remain crime-free in light of his
24 admitted problem with alcohol and drugs during the time leading up to
25 his offense. [See Resp. Ex. 6 (mental health evaluation noting
26 petitioner's use of alcohol and drugs, stating that petitioner was
27
28 under the influence of alcohol at the time of the offense, and opining

1  that alcohol use is a significant factor in determining petitioner's

2  risk of danger if released)].  Finally, the BPT was entitled to rely

3  on the gravity of the offense in petitioner's case.

4      While the Ninth Circuit has concluded that "[a] continued

5  reliance in the future on an unchanging factor, the circumstance of

6  the offense and conduct prior to imprisonment, runs contrary to the

7  rehabilitative goals espoused by the prison system and could result in

8  a due process violation," it has not specified what number of hearings

9  or years might constitute the requisite length of time to find that

10  continuing reliance on an unchanging fact to deny parole amounts to a

11  violation of due process.  See Biggs, 334 F.3d at 917.   In cases

12  similar to Biggs, where the denial of parole was made at the

13  petitioner's first parole suitability hearing, or at the first parole

14  suitability hearing where the BPT relied solely on the facts of the

15  commitment offense to deny parole, no due process violation has been

16  found.  See, e.g., Jones v. Solis, 2005 WL 927699, *11-12 (N.D.Cal.

17  2006) (no due process violation found in denial of parole at second

18  suitability hearing, where it was first denial based solely upon the

19  facts of the commitment offense); Hudson v. Kane, 2005 WL 2035590,

20  *9-10 (N.D.Cal. 2005) (no due process violation found in denial of

21  parole at third parole suitability hearing, where it was the first

22  denial based solely on the facts of the commitment offense).  On the

23  other hand, in those cases where the petitioner has had several parole

24  suitability hearings over a long period of time and the BPT panel

25  relied solely on the commitment offense to deny parole, a violation of

26  due process has been found.  See, e.g., Irons v. Warden of Cal. State

1  Prison--Solano, 358 F.Supp.2d 936, 947 (E.D.Cal. 2005) (finding a due

2  process violation in denial of parole at fifth parole suitability

3  hearing after petitioner had served sixteen years of a fifteen years

4  to life sentence for second degree murder and the circumstances

5  indicated suitability for parole), appeal docketed, No. 05-15275 (9th

6  Cir. Feb. 17, 2005); Johnson v. Finn, 2006 WL 195159, * 12 (E.D.Cal.

7  2006) (finding a due process violation in denial of parole at twelfth

8  parole suitability hearing after petitioner had served twenty-four

9  years of sentence of a life with the possibility of parole and the

10  circumstances indicated suitability for parole); Masoner v. State,

11  2004 WL 1080177 *1-2 (C.D.Cal. 2004) (finding a due process violation

12  based on the BPT's "continued reliance" on pre-conviction factors to

13  justify denial of parole after petitioner had served twenty-one years

14  of a fifteen years to life sentence for second degree murder, had

15  participated in therapy and self-help programming, and had an

16  impeccable prison record).

17      This was only petitioner's first parole hearing.  Thus, even if

18  the BPT had relied solely on the unchanging facts of petitioner's

19  crime or criminal history to support its conclusion that he posed an

20  unreasonable risk of danger if released, such reliance would not

21  violate due process.  See Sass, 2006 WL 2506393, *4 (holding that the

22  evidence of the petitioner's prior offenses and the gravity of his

23  commitment offenses constituted some evidence to support the BPT's

24  determination of unsuitability in the petitioner's third parole

25  suitability hearing).  Moreover, as discussed above, the BPT did not

26  rely solely on the unchanging facts of petitioner's commitment

14

1  offense.   Therefore, there is some reliable evidence in the record

2  supporting the BPT's finding that petitioner would pose an

3  unreasonable risk to the community if released on parole, and its

4  decision did not violate due process.  Accordingly, petitioner is not

5  entitled to relief.

6                                **Conclusion**

7        It is recommended that the petition for a writ of habeas corpus

8  be denied.

9

10

11  DATED: <u>9.21.2006</u>

12

13  _____
    Andrew J. Wistrich
    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

LODGED
CLERK, U.S. DISTRICT COURT

SEP 2 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                    **WESTERN DIVISION**

11  BENITO NUNEZ GONZALES,          )    Case No. CV 04-8881-PA(AJW)
                                    )
12          Petitioner,             )
                                    )
13      v.                          )    **JUDGMENT**
                                    )
14  A.P. KANE, Warden,              )
                                    )
15          Respondent.             )
    _____)

16

17

18      It is hereby adjudged that the petition for a writ of habeas

19  corpus is denied.

20

21  Dated: _____

22

23                              _____
                                Percy Anderson
24                              United States District Judge

25

26

27

28